NOT DESIGNATED FOR PUBLICATION

No. 119,535

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of
T.E.B.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Butler District Court; MICHAEL E. WARD, judge. Opinion filed November 30, 2018. Affirmed.

*Joshua S. Andrews*, of Cami R. Baker & Associates, P.A., of Augusta, for appellant natural father.

*Joseph M. Penney*, assistant county attorney, for appellee.

Before GARDNER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: Father appeals the termination of his parental rights to his son, T.E.B., challenging the sufficiency of the evidence to terminate his parental rights. After reviewing the record, we find clear and convincing evidence supported the district court's order terminating Father's parental rights. Thus, we affirm.

In August 2015, the State alleged T.E.B. was a child in need of care (CINC) and the court adjudicated T.E.B. a CINC. In June 2016, the State moved to terminate Mother and Father's parental rights. It alleged Father was an unfit parent based on his illegal drug use and alleged Father physically, mentally, or emotionally neglected T.E.B. The petition also alleged Father failed to adjust his circumstances, conduct, or condition to meet T.E.B.'s needs; failed to carry out a reasonable plan toward the reintegration of

1

T.E.B. into his home; and failed to pay a reasonable portion of the substitute physical care and maintenance.

The termination hearing began November 4, 2016. After hearing testimony from numerous witnesses, the court scheduled an additional day for the hearing. Ultimately, the district court terminated Mother's parental rights but chose not to terminate Father's parental rights. The district court found that, despite struggling with substance abuse and struggling to maintain stable housing and employment, Father was making progress. It found Father "has done and shown this Court enough to merit additional time to demonstrate consistent sobriety as well as the overall ability to provide a good home for [T.E.B.]." The district court also ordered Father submit to a hair follicle test on or before March 31, 2017.

In August 2017, the State again moved to terminate Father's parental rights. It alleged Father was presumptively unfit because T.E.B. had been in out-of-home placement for more than two years and Father had failed to carry out a reasonable plan directed toward reintegration. It also alleged Father was unfit based on the excessive use of drugs, and there had been a lack of effort by Father to adjust his circumstances, conduct, or conditions to meet T.E.B.'s need. Finally, the State alleged Father had failed to carry out a reasonable plan directed toward reintegration because Father had not maintained stable housing, submitted to random drug testing, and failed to maintain stable employment.

At the termination hearing, Wallace Harvey, a substance abuse counselor with Mirrors, Inc., testified Father began treatment on May 18, 2017. Father attended 9 sessions but missed 14 sessions. Mirrors unsuccessfully discharged Father as incomplete due to nonattendance.

The district court bifurcated the hearing and continued it based on the unavailability of T.E.B.'s foster mother, a witness for the State. The State requested the district court order a UA and hair follicle testing immediately after the hearing. After noting Father did not complete court-ordered drug testing following two prior hearings, the district court declined to order drug testing because "he doesn't do it any way." However, the district court recommended Father submit to drug testing to show he was sober.

The hearing resumed a month and a half later. David Kuntz testified Father tested positive for methamphetamine on March 31, 2017.

Gabrielle Meadows, a caseworker at St. Francis, testified she supervised visits between Father and T.E.B. She believed nothing had changed since the prior termination hearing. Meadows considered Father noncompliant with drug testing because he missed many requested tests. She indicated Father told her he was attending open meetings at the Newton Group, but she was unable to verify whether that was a formal drug treatment program. Father had not had stable housing of his own, and his parents' house was not a possible reintegration location because the house triggered T.E.B.'s posttraumatic stress disorder. Meadows explained Father had not maintained stable employment. Instead, he changed jobs frequently. She believed T.E.B. needed permanency and Father was unable to provide permanency. She believed terminating Father's parental rights was in T.E.B.'s best interests. Ashley Park, a supervisor at St. Francis, testified she believed termination of Father's parental rights was in T.E.B.'s best interest.

J.S., T.E.B.'s foster mother, testified after visits with Father, T.E.B. was frequently angry. Over the course of the case, T.E.B. broke 13 pairs of prescription glasses. T.E.B. also lashed out and hit friends, teachers, and himself. However, after visitation with Father stopped, T.E.B.'s behavior immediately improved.

3

The district court found Father "failed miserably" at submitting to drug testing. It found Father failed to complete court-ordered drug treatment after failing to attend sessions. The district court found Father had sporadic employment since the prior termination hearing. The district court found Father was unfit based on K.S.A. 2017 Supp. 38-2269(b)(3), (7), and (8), (c)(2) and (3), and K.S.A. 2017 Supp. 38-2271(a)(6). It found termination of parental rights was in the best interest of the child and terminated Father's parental rights.

A parent has a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution to make decisions regarding the care, custody, and control of the parent's child. Before a parent can be deprived of the right to the custody, care, and control of the child, the parent is entitled to due process of law. *In re Adoption of A.A.T.*, 287 Kan. 590, 600-01, 196 P.3d 1180 (2008); see *In re X.D.*, 51 Kan. App. 2d 71, 74, 340 P.3d 1230 (2014) (the right to be the legal parent of a child is a fundamental right).

The Kansas Legislature has specified that the State must prove "by clear and convincing evidence that the child is a child in need of care." K.S.A. 2017 Supp. 38-2250. In addition to CINC adjudications, the clear and convincing evidence standard of proof applies to all termination of parental rights cases. K.S.A. 2017 Supp. 38-2269(a).

> "When this court reviews a district court's termination of parental rights, we consider whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the parent's right should be terminated. [Citation omitted.]." *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011).

In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

4

The Revised Kansas Code for Care of Children provides that the court may terminate parental rights when a child has been adjudicated a CINC. K.S.A. 2017 Supp. 38-2269(a). The statute lists nonexclusive factors the court shall consider in determining unfitness. K.S.A. 2017 Supp. 38-2269(b). The court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 2017 Supp. 38-2269(c). Any one of the factors in K.S.A. 2017 Supp. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2017 Supp. 38-2269(f). The nonexclusive factors listed in K.S.A. 2017 Supp. 38-2269 include, in relevant part:

> "(b)(3) the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child;
>
> . . . .
>
> (7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family; and
>
> (8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child; and
>
> . . . .
>
> "(c) In addition to the foregoing, when a child is not in the physical custody of a parent, the court, shall consider, but is not limited to, the following:
>
> . . . .
>
> (2) failure to maintain regular visitation, contact or communication with the child or with the custodian of the child;
>
> (3) failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home."

In addition, a parent is presumed unfit if the State establishes, by clear and convincing evidence,

"(A) the child has been in out-of-home placement, under court order for a cumulative total period of two years or longer; (B) the parent has failed to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home; and (C) there is a substantial probability that the parent will not carry out such plan in the future." K.S.A. 2017 Supp. 38-2271(a)(6).

The district court terminated Father's parental rights based, in part, on the presumption in K.S.A. 2017 Supp. 38-2271(a)(6). On appeal, Father does not argue the district court erred when it terminated his parental rights based upon this presumption. When a district court provides alternative bases to support its ultimate ruling on an issue and an appellant fails to challenge the validity of both alternative bases on appeal, an appellate court may decline to address the appellant's challenge to the district court's ruling. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 280, 225 P.3d 707 (2010). Furthermore, since Father failed to rebut the presumption of unfitness, we could simply address whether termination of parental rights was in the best interest of the child. Nonetheless, clear and convincing evidence supported the termination of Father's parental rights under K.S.A. 2017 Supp. 38-2269(b)(3), (7), and (8), and (c)(2) and (3).

Father argues the district court erred when it terminated his parental rights based on his drug use. He contends the only evidence supporting the district court's finding of unfitness was a positive UA on March 31, 2017. He contends after March 31, 2017, he completed a drug and alcohol assessment and began attending treatment. Father acknowledges he did not complete treatment but suggests there was no evidence his drug use rendered him unable to care for T.E.B.'s ongoing physical, mental, or emotional needs. This argument, however, ignores Father's history with drugs and Father's repeated failure or refusal to submit to drug testing, including court-ordered drug testing. Between February 16, 2017, and January 26, 2018, Father failed or refused to submit to 13 drug tests. This argument also downplays Father's failure to complete treatment after testing positive for methamphetamine on March 31, 2017. Father only attended 9 sessions—and

6

missed 14—before being discharged for nonattendance. Viewed in the light most favorable to the State, a rational fact-finder could have found it highly probable Father continued to use drugs and his parental rights should be terminated.

Father contends the district court erred when it terminated his parental rights for failing to adjust his circumstances, conduct, or condition to meet the needs of the child. He asserts his circumstances were suitable to meet T.E.B.'s needs. However, Father was living with his parents, and his parents' house was not a possible reintegration location because the house triggered T.E.B.'s posttraumatic stress disorder. Father knew this. Similarly, Father frequently changed jobs, working at least six different jobs between January 2017 and January 2018. Viewed in the light most favorable to the State, a rational fact-finder could find it highly probable Father's parental rights should be terminated for failing to adjust his circumstances to meet the child's needs.

Father also argues the district court erred when it terminated his parental rights because he failed to carry out a reasonable plan, approved by the court, directed toward the integration of the child into the parental home. Since the case plan had dual goals of reintegration and adoption, Father asserts the case plan is "inherently conflicted and therefore unreasonable." However, the case plan was clearly reasonable and Father failed to carry out the case plan. He failed to complete a second round of drug treatment, failed to maintain stable housing, failed or refused to submit to drug testing, and frequently changed jobs. Viewed in the light most favorable to the State, a rational fact-finder could find it highly probable Father's parental rights should be terminated for failure to carry out a reasonable plan directed toward the reintegration of the child into the parental home.

Father contends the failure of reasonable efforts to rehabilitate the family should not weigh in favor of termination because St. Francis did not make reasonable efforts to rehabilitate the family. He argues the decision to stop visits between him and T.E.B.

7

created a barrier to reintegration. It appears the district court may have ordered the visits to stop, not St. Francis; the record is unclear. Nonetheless, even assuming the district court erred when it terminated Father's parental rights because of the failure of reasonable efforts to rehabilitate the family, there is clear and convincing evidence supporting the other grounds for termination.

Clear and convincing evidence supports the district court's termination of Father's parental rights. Viewed in the light most favorable to the State, a rational fact-finder could find it highly probable Father's parental rights should be terminated. As a result, we turn to whether termination of Father's parental rights was in the best interests of the child.

Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2017 Supp. 38-2269(g)(1). In making such a decision, the court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2017 Supp. 38-2269(g)(1). "[T]he court must weigh the benefits of permanency for the children without the presence of their parent against the continued presence of the parent and the attendant issues created for the children's lives." *In re K.R.*, 43 Kan. App. 2d 891, 904, 233 P.3d 746 (2010). The district court is in the best position to make findings on the best interests of the children; its judgment will not be disturbed absent an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (2010). "A district court abuses its discretion when no reasonable person would agree with its decision or the decision is based on a legal or factual error." *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 2, 336 P.3d 903 (2014).

Father does not argue the district court erred when it determined termination of parental rights were in T.E.B.'s best interests or that his conduct or condition was unlikely to change in the foreseeable future. Issues not briefed are waived or abandoned. *In re*

8

*Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). Father has abandoned both issues. Regardless, the district court did not abuse its discretion. Although T.E.B. loved his Father, he needed permanency and the case had dragged on for two years. We look at "foreseeable future" from the child's perspective, not the parents. *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). The district court declined to terminate Father's parental rights at the first termination hearing because he showed progress toward reintegration. Between the termination hearings, Father made no progress toward reintegration; he still lacked appropriate housing, still likely struggled with drugs, still struggled with consistent employment, and T.E.B.'s attitude improved when the Father's visitations terminated. Termination of Father's parental rights was in the best interest of the child.

Affirmed.